UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLACY WATSON HERRERA,

    Petitioner,                          CASE NO. 4:24-CV-11492
                                         HON. F. KAY BEHM
v.                                         U. S. District Judge

ERIC RARDIN,

    Respondent.
_____/

**OPINION AND ORDER DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS BROUGHT PURSUANT TO 28 U.S.C. § 2241 AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Clacy Watson Herrera, ("Petitioner"), confined at the Federal Correctional Institution in Milan, Michigan (FCI-Milan), filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the Bureau of Prisons' (BOP) refusal to apply his earned time credits under the First Step Act (FSA) toward early release to pre-release custody. For the reasons stated below, the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is **DISMISSED WITH PREJUDICE**.

## I. Background

From approximately 1996 to 1999, Petitioner was a leader of an international drug conspiracy that imported cocaine and heroin into the United States from Panama and Jamaica. *United States v. Herrera*, 366 F. App'x 674, 675

1

(7th Cir. 2010).  Petitioner was indicted for numerous drug offenses in 2001.  *Id.*  In 2009, Petitioner was extradited to the United States by the Government of Panama.  Petitioner was tried and convicted by a jury in the United States District Court for the Northern District of Illinois of Attempted Importation and Conspiracy to Import and Export Controlled Substances, in violation of 21 U.S.C. § 963, and Importation of Controlled Substances, in violation of 21 U.S.C. § 952.  *Id.* at 676.  Petitioner was sentenced to 340 months in prison to be followed by four years of supervised release.  *United States v. Herrera*, No. 14 C 1933, 2016 WL 561904 (N.D. Ill. Feb. 12, 2016).

Petitioner's conviction was affirmed on appeal.  *United States v. Herrera*, 704 F.3d 480 (7th Cir. 2013), *cert. denied*, 571 U.S. 941 (2013).  Petitioner subsequently filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255, which was denied.  *United States v. Herrera*, No. 14 C 1933, 2016 WL 561904 (N.D. Ill. Feb. 12, 2016).  Petitioner then filed a motion for compassionate release in front of his sentencing judge, which was denied.  *United States v. Herrera*, No. 01 CR 01098-1, 2023 WL 3947608 (N.D. Ill. June 12, 2023), *aff'd*, No. 23-2310, 2024 WL 976447 (7th Cir. Mar. 7, 2024).

Petitioner is currently serving his sentence at FCI Milan, with a projected release date of October 19, 2027, via Good Conduct Time Release. (ECF No. 8-2, PageID.164).  Petitioner is a native and citizen of Columbia without a visa, reentry

permit, border crossing card, or any other valid entry document. (*Id.*, PageID.164, 169-73). Petitioner is thus not authorized to remain in the United States after his incarceration ends and is subject to removal by the Department of Homeland Security. (*Id.*).

Petitioner filed two administrative remedy requests in which he sought to have First Step Act earned time credits (FTCs) applied toward his early transfer to prerelease custody. (ECF No. 8-3, PageID.176-77). The warden responded to the first request in November 2023. (*Id.*, PageID.180). At that time, Petitioner did not have a final order of deportation lodged against him, thus, the BOP began to initiate his request to apply his FTCs toward early transfer to prerelease custody. No appeal was taken by Petitioner from this decision. Petitioner's second request, received by the warden in May 2024, was rejected because it was not received in the proper form. Petitioner was asked to cure the problem, but he failed to do so. (*Id.*, PageID.199). Petitioner never appealed either administrative request up to the Office of General Counsel. (*Id.*, PageID.176-77).

The Department of Homeland Security issued a final order of removal against Petitioner on January 25, 2024. (ECF No. 1, PageID.41). When an immigration officer attempted to serve that order on Petitioner, he refused to sign it. *Id*. Because of the final order of removal, Petitioner is now ineligible to apply any FTCs to his sentence.

Petitioner in his petition argues that the Bureau of Prisons' reliance on the final order of removal as a basis for not applying his earned FTCs violates his equal-protection and due-process rights. He argues that the removal order is invalid because he has filed for asylum and the appeal process is pending. Petitioner seeks to have his FTCs restored and applied to his sentence.

## II. Discussion

A petition for a writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which his sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). Petitioner's current application is properly brought under § 2241 because he is challenging the manner in which his sentence is being executed.

Eligible federal inmates, those whose convictions do not exclude them from receiving First Step Act benefits, may earn FTCs. An eligible inmate can earn 10 FTCs "for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). An inmate can earn an additional 5 FTCs during those 30 days if (1) his recidivism-risk rating is minimum or low and (2) his risk of recidivism has not increased for two consecutive recidivism assessments by the BOP. 18 U.S.C. § 3632(d)(4)(A)(ii); *see also* 28 C.F.R. § 523.42(c)(2).

A maximum of 365 days of FTCs may be applied towards a prisoner's early transfer to supervised release, basically shortening the sentence by up to one year. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d). Eligible prisoners may have any remaining FTCs applied towards early transfer to prerelease custody, either in a residential reentry center or home confinement. 28 C.F.R. § 523.44(c).

Petitioner is not entitled to habeas relief for several reasons. First, Petitioner failed to exhaust his administrative remedies prior to filing his habeas petition. A federal habeas corpus petitioner is required to exhaust his administrative remedies before seeking habeas corpus relief under 28 U.S.C. § 2241. *See Luedtke v. Berkebile,* 704 F.3d 465, 466 (6th Cir. 2013); *Fazzini v. Northeast Ohio Correctional Center,* 473 F.3d 229, 231 (6th Cir. 2006); *Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981). The failure to exhaust administrative remedies is an affirmative defense that the respondent is required to prove. *See e.g. Luedtke,* 704 F. 3d at 466.

The Bureau of Prisons maintains an extensive administrative remedy procedure "through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. Pursuant to this administrative procedure, a prisoner who seeks administrative review of a complaint concerning the BOP must apply to the warden or community corrections manager, to the

5

Regional Director, and to the Office of General Counsel for relief. *See Mazzanti v. Bogan,* 866 F. Supp. 1029, 1032 (E.D. Mich. 1994) (citing 28 C.F.R. §§ 542.11, 542.13, and 542.15).

Petitioner filed two administrative requests for his FTCs with the warden but did not file any appeals from either of his requests. Petitioner's second request, received by the warden in May of 2024, was rejected because it was not received in the proper form. Petitioner was asked to cure the problem, but he failed to do so.

Administrative law requires the proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) (internal citation and quotation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.,* at 90-91.

Petitioner did not properly exhaust his administrative remedies regarding his First Step Act credits because he did not resubmit his second request with the warden nor did he file appeals from either of his requests to the Regional Director or the Office of General Counsel.

"An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels." *Crisp v. United States,* No. 20-11538, 2020 WL 8765938, *1 (E.D. Mich. Aug. 12, 2020) (quoting *Irwin v. Hawk*, 40 F.3d 347, 349 n. 2 (11th Cir. 1994)). Because Petitioner did not properly exhaust his claim at all three levels of administrative review as required, Petitioner's claims are unexhausted.

Although there is a futility exception to the exhaustion requirement, *see Fazzini,* 473 F.3d at 236 (citing *Aron v. LaManna,* 4 F. App'x 232, 233 (6th Cir. 2001)), Petitioner failed to show that it would be futile to exhaust his claim. Because Petitioner failed to exhaust his available administrative remedies, his petition is subject to dismissal on that basis. *See e.g. Gates-Bey v. U.S. Parole Com'n,* 9 Fed. Appx. 308, 310 (6th Cir. 2001).

Assuming Petitioner properly exhausted his claims, he is still not entitled to habeas relief. This Court first notes that inmates have no right under the federal constitution to earn or receive sentencing credits. *See Moore v. Hofbauer,* 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (citing *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir. 1992)). Additionally, a federal prisoner does not have a constitutionally protected liberty interest in earning future sentence credits. *See Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002).

7

The First Step Act indicates that a federal prisoner is "ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws." 18 U.S.C.§ 3632(d)(4)(E)(i). Petitioner does not have any liberty interest in receiving his FSA credits, thus, his due process claim is without merit. *See Cheng v. United States*, 725 F. Supp. 3d 432, 440 (S.D. N.Y. 2024).

"Courts that 'have considered the issue have routinely found that a federal inmate does not have a liberty interest in receiving credits under the First Step Act.'" *Fontanez v. Rardin*, No. 2:23-CV-12415, 2024 WL 1776338, at *3 (E.D. Mich. Apr. 24, 2024) (quoting *Sedlacek v. Rardin*, No. 2:23-CV-11899, 2024 WL 965607, at *2 (E.D. Mich. Mar. 5, 2024)); *see also White v. Warden*, No. CV DKC-22-2371, 2023 WL 4867562, at *10 (D. Md. July 31, 2023) (prisoner "did not have a liberty interest in the opportunity to earn" FSA time credits); *Fiorito v. Fikes*, No. 22-CV-0749 (PJS/TNL), 2022 WL 16699472, at *6 (D. Minn. Nov. 3, 2022) ("the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest"); *Gant v. King*, No. 23-CV-1766 (NEB/ECW), 2023 WL 6910771, at *3 (D. Minn. Oct. 19, 2023) ("prisoners do not have a protected liberty interest in the application of FSA time credits"); *Mars v. Heisner*, No. CV-22-01933-PHX-SPL (JZB), 2023 WL 4977335, at *7 (D. Ariz. June 26, 2023) (concluding that a prisoner does not "have a constitutional right to

'apply' his FSA [time credits] in a specific manner, such as demanding that he be granted prerelease custody or home confinement"), *report and recommendation adopted*, 2023 WL 4960411 (D. Ariz. Aug. 3, 2023); *Bloom v. Fed. Bureau of Prisons*, No. 19-21589 (KMW) (SAK), 2022 WL 341200, at *2 (D.N.J. Feb. 4, 2022) ("prisoners have no constitutionally protected liberty interest in an opportunity to earn additional good time or similar credits").

In *Fiorito*, 2022 WL 16699472, at *6, the court referred to First Step Act time credits as FTCs and noted that they "are not a general entitlement. Instead, federal inmates are merely afforded the *opportunity* to earn FTCs by participating in recidivism-reduction programming." (emphasis original). The court continued:

> The general rule that the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest makes particular sense in the context of FTCs, as the opportunity to participate in recidivism-reduction programming can be lost for several reasons, including reasons having nothing to do with the conduct or blameworthiness of the prisoner. For example, a prisoner who is temporarily transferred from the custody of the BOP to a non-BOP facility to testify at trial, *see* 28 U.S.C. § 2241(c)(5), would be unable to successfully participate in BOP recidivism reduction programming during the time that the prisoner remained outside the custody of the BOP, *see* 28 C.F.R. § 523.41(c)(4)(iii). The same would be true of a prisoner who is transferred to a hospital for extended treatment of a serious medical need. *See id*. § 523.41(c)(4)(ii). The statute and accompanying regulations betray no expectation that FTC credits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various

9

>times during his detention. This is too flimsy an expectation to give rise to a protected liberty interest.

*Id.* Other courts have reached the same conclusion. *See White*, 2023 WL 4867562, at *10 (discussing the holding in *Fiorito* and stating that its "analysis is sound"); *Gant*, 2023 WL 6910771, at *3 ("Given the contingent nature of the application of FSA time credits to prerelease custody, they cannot reasonably be regarded as an entitlement."). The BOP's denial of FTC credits to Petitioner did not violate his right to due process.

Petitioner also claims that the BOP's denial of FTCs also violates his right to equal protection. "Although the Fourteenth Amendment applies on its face only to the states, the Due Process Clause of the Fifth Amendment imposes equal protection constraints on the federal government." *United States v. Green*, 654 F.3d 637, 650–51 (6th Cir. 2011) (citing *Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954)). A federal court should "evaluate equal protection claims against the federal government under the Fifth Amendment just as [the court] would evaluate equal protection claims against state and local governments under the Fourteenth Amendment." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *United States v. Angel*, 355 F.3d 462, 471 (6th Cir. 2004)).

To violate the Fourteenth Amendment's Equal Protection Clause, the state must treat two groups of similarly situated people differently. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). This right demands that "all

persons similarly situated should be treated alike." *Id.* Classifications based on "race, alienage ... national origin ... [or] gender ... call for a heightened standard of review." *Id.* at 440. Absent one of these suspect classifications, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.*

Aliens with final orders of removal are not a protected class for purposes of the Equal Protection Act. *See Graham v. Mukasey*, 519 F.3d 546, 549, 551 (6th Cir. 2008) (holding that an alien who was ordered to be removed from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) was not part of a "suspect class"). Petitioner failed to show that The BOP's decision to deny him FTCs based on the order of final removal violated his right to equal protection because he failed to show (1) that his differential treatment from other federal inmates is based on impermissible considerations, or (2) that treating him differently from aliens without final orders of removal lacks a rational basis. *Cheng v. United States*, 725 F. Supp. 3d at 439. "To the contrary, prohibiting removable aliens from applying time credits to their sentences and releasing them into the community serves the legitimate purpose of reducing the risk that aliens facing deportation will flee. The courts of appeals have repeatedly recognized that aliens facing deportation have a heightened incentive to flee following their release from custody." *Id.* (citing *Builes v. Warden Moshannon Valley Corr. Ctr.*, 712 F. App'x 132, 134 (3rd Cir.

11

2017); *Gallegos-Hernandez v. United States*, 688 F.3d 190, 196 (5th Cir. 2012)). "It is similarly rational to prevent removable aliens from applying time credits to their sentences to facilitate their early deportation. Requiring defendants who commit aggravated felonies after entering this country illegally to serve their full sentence serves the rational legislative judgment to punish some individuals more severely than others." *Id.* Petitioner is not entitled to relief on his equal protection claim; the decision to deny him FSA credits due to the final removal order has a rational basis. *Id.*

Petitioner in his reply brief argues that the BOP's decision to deny him his FSA credits after the final removal order was issued, after initially indicating that they would be inclined to do so, violates the *Ex Post Facto* Clause. Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws. The *Ex Post Facto* Clause prohibits any law which: 1) makes an act which had previously been innocent a criminal act; 2) aggravates a crime and makes it more serious than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony or a lesser quantum of evidence to convict the defendant than was required at the time that the crime was committed. *See Carmell v. Texas*, 529 U.S. 513, 522 (2000) (citing to *Calder v. Bull,* 3 U.S. 386, 390 (1798)).

The BOP's decision to exclude Petitioner from eligibility for time credits under the First Step Act after a final order of removal had been issued did not violate the *Ex Post Facto* Clause. Petitioner had notice of his immigration detainer at all relevant times, and his ability to earn FSA time credits from the beginning was subject to the limitation that he would be unable to apply those credits if he were ever the subject of an order of removal. *See Batioja Cuero v. Warden, FCI Berlin*, No. 23-CV-065-LM-AJ, 2024 WL 4171204, *7, ---- F. Supp. 3d---- (D.N.H. Sept. 12, 2024). Other courts have found that the BOP's decision to recalculate a non-U.S. citizen's sentence to exclude FSA earned time credits after that person became the subject of a final order of removal did not violate the *Ex Post Facto* Clause. *Id.* (collecting cases).

Petitioner also claims that his final removal order is invalid because he is seeking asylum and his appeal is pending in the immigration courts. The REAL ID Act of 2005 eliminates a petition for a writ of habeas corpus as a means for judicial review of a final removal order. *See Muka v. Baker,* 559 F.3d 480, 483 (6th Cir. 2009). The Real ID Act of 2005 limits the ability of district courts to review removal orders in immigration cases by providing that:

> Notwithstanding any other provision of law (statutory or non-statutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 [pertaining to district court jurisdiction over mandamus actions] and 1651 [pertaining to the authority of federal courts to issue writs] of such title, a petition for review

13

> filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review* of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section [pertaining to review of expedited removal orders].

8 U.S.C. § 1252(a)(5) (emphasis added).

Pursuant to the REAL ID Act, this Court lacks jurisdiction to stay Petitioner's removal. *See Benitez v. Dedvukaj*, 656 F. Supp. 2d 725, 729 (E.D. Mich. 2009). "All court orders regarding alien removal, including stays or permanent injunctions, are issued by the appropriate court of appeals." *Elcheikhali v. Holder*, No. 4:10CV2333, 2010 WL 4818390, at *2 (N.D. Ohio Nov. 22, 2010). Moreover, until Petitioner takes advantage of the proper procedures to effectively challenge his Final Order of Removal, it remains valid, and the Court must evaluate his habeas claim on the assumption that it is valid. *See Pina v. Martinez*, No. 2:23-CV-01628, 2023 WL 9423314, at *2 (W.D. La. Dec. 11, 2023), *report and recommendation adopted*, No. 2:23-CV-01638, 2024 WL 314263 (W.D. La. Jan. 26, 2024). Should Petitioner wish to seek to challenge his final removal order or seek a stay of the removal order while his asylum request is pending, any such action must be filed with the United States Court of Appeals for the Sixth Circuit.

### III. Conclusion

**IT IS HEREBY ORDERED** that the Petition for a Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 is **DISMISSED WITH PREJUDICE**.

Because a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States,* 355 F.3d 501, 504 (6th Cir. 2004), Petitioner need not apply for one with this Court or with the Sixth Circuit before filing an appeal from the denial of his habeas petition. The Court will grant Petitioner leave to appeal *in forma pauperis* because any appeal would be taken in good faith. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**SO ORDERED.**

Date: December 10, 2024

s/F. Kay Behm
F. Kay Behm
United States District Judge